IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA     :
                             :    CRIMINAL ACTION
        v.                   :    NO. 20-00318
                             :
                             :
MIKAL UPSHUR                 :
                             :

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                                April 28, 2021

I.  **INTRODUCTION**

Presently before the Court are two pro se motions to suppress filed by Defendant Mikal Upshur. Upshur's Motion to Suppress Evidence seeks to suppress all evidence recovered during his arrest, and his Motion to Suppress Statements seeks to suppress statements made during and after his arrest.

This memorandum constitutes the Court's findings of fact and conclusions of law with respect to both motions. For the reasons set forth below, the Court will deny the Motion to Suppress Evidence and will grant in part and deny in part the Motion to Suppress Statements, such that Upshur's statements made in response to direct police questioning will be suppressed but Upshur's spontaneous statement will not be suppressed.

## II. FINDINGS OF FACT

Philadelphia Police Department officers Zachary Stout and Jesse Rosinski testified at the suppression hearing that the events surrounding Upshur's arrest occurred as follows. The Court finds their testimony credible.[1]

On December 18, 2019, Rosinski and Stout were patrolling in the area of 16th Street and Lehigh Avenue in an unmarked patrol car and in full police uniform. Stout, who was driving the vehicle, saw Upshur attempt to hand a small green capsule to another person, but the capsule dropped to the ground. Stout was approximately four or five car lengths away from Upshur when he made this observation. Based on his training and experience, Stout knew that the type of capsule he observed was commonly used to package crack cocaine. Stout told Rosinski what he saw.

---

[1] The Court notes minor discrepancies between Stout's suppression hearing testimony and Rosinski's testimony, as well as between the officers' testimony and the paperwork they filled out after the arrest. The discrepancies, however, are relatively unimportant and are not material to the ultimate issues in this case.

For example, the Court notes a discrepancy between Rosinski's suppression hearing testimony that he did not ask Upshur any questions before Upshur fled unprovoked and Rosinski's previous statement that he asked Upshur the address of a residence Upshur was attempting to enter before Upshur fled. This discrepancy is not material, since Rosinski's posing such a question to Upshur would not, standing alone, constitute a seizure. See infra Section IV.A.1; see also Florida v. Bostick, 501 U.S. 429, 434 (1991) ("Since Terry, we have held repeatedly that mere police questioning does not constitute a seizure.").

Rosinski got out of the car to speak with Upshur. When Rosinski approached Upshur, Upshur turned and fled.[2]

Rosinski chased after Upshur. Rosinski saw Upshur running with his hand on his hip, which led Rosinski to believe Upshur

---

[2] At the suppression hearing, Upshur called a social friend, Amirah Capetula-Roney, as a witness. Roney claimed to have witnessed the incident while waiting for Upshur in a parked vehicle. She testified that she was parked in the center of the block, not directly in front of the corner store where Upshur was standing, and that she thought she saw the officer reach out and lay a hand on Upshur before Upshur fled:

> Q: So you said you see the officer reach out?
> A: Yeah.
> Q: Did he make contact with Mr. Upshur?
> A: It happened so fast. Um, it happened so fast, I think he did make contact, a little bit of contact or he tried to make contact and then --
> Q: So, so when he reached out, his hand actually touched Mr. Upshur?
> A: I think it touched him.

Suppression Hr'g Tr. 113:7-15, ECF No. 52.

Roney also testified as follows:

> Q: But you did, in fact, see officer -- one of the officers reach out and attempt to grab Mr. Upshur?
> A: Yes, I did.

Suppression Hr'g Tr. 115:4-6.

However, Rosinski testified that he did not lay hands on Upshur until he handcuffed Upshur after the pursuit:

> Q: Before the Defendant took off running, did you conduct a stop-and-frisk on him?
> A. No.
> Q. All right. Was the first time that you laid hands on the Defendant when you caught him in the alley and put him in handcuffs after he threw his gun away?
> A. Yes.

Suppression Hr'g Tr. 69:14-20.

Given that Roney is a social friend who has an interest in the outcome of the case and that she seemed less than certain about what she saw, the Court credits Rosinski's testimony that he did not make physical contact with Upshur before Upshur fled.

had a concealed firearm. Stout observed the chase and saw Upshur discarding multiple small green vials as he ran. While chasing Upshur, Rosinski saw Upshur take his hand out of his waistband and throw an L-shaped black object from his waistband at an alley wall, making a metallic sound.[3]

Rosinski eventually caught Upshur and handcuffed him. Rosinski told Stout that Upshur had thrown a firearm and directed Stout to the relevant area. Stout found the firearm. Stout and other officers who arrived went back over the area of pursuit and recovered multiple small plastic vials where Stout had observed Upshur discard the vials.

Following Upshur's arrest, Stout and Rosinski had a brief discussion with one another in Upshur's presence about the gun they had recovered. Stout asked Rosinski if the gun was a 9 mm. Although Stout's question was directed at Rosinski and not at Upshur, Upshur responded that the gun was a .380.

Later, before Upshur was advised of his Miranda rights, Stout asked Upshur why he was carrying a gun. Upshur responded that he was carrying a gun because he had been shot at before

---

[3] At the suppression hearing, Upshur highlighted an alleged discrepancy between the property receipt for the gun, which stated that the gun was "recovered from Mikal Upshur," and the officers' suppression hearing testimony that they recovered the gun after Upshur discarded it. The Court credits the officers' testimony that the "recovered from" language is a customary practice used in filling out property receipts and does not indicate that the gun was physically taken from Upshur's person, but rather that Upshur was the source of the evidence.

4

and that he had traded in two guns for the .380 the officers recovered.

Upshur was charged in a four-count indictment with possession to distribute cocaine base, possession of a firearm in furtherance of a drug trafficking crime, possession of a firearm by a felon, and possession of a firearm with an obliterated serial number. He pled not guilty to all counts. In January 2021, following a hearing, the Court granted Upshur's request to proceed pro se and appointed the Federal Defender as standby counsel. The Court held a hearing on the instant motions to suppress on April 21, 2021.

**III. LEGAL STANDARD**

"[T]he Government bears the burden at a suppression hearing where . . . the search or seizure was conducted without a warrant. It must establish by a preponderance of the evidence when the seizure occurred and that it was then supported by reasonable suspicion." United States v. Lowe, 791 F.3d 424, 432 n.4 (3d Cir. 2015) (citations omitted).

When the Government seeks to admit statements made during custodial interrogation, it "has the burden of proving by a preponderance of the evidence that a defendant was advised of his/her rights and voluntarily and knowingly waived them." United States v. Lin, 131 F. App'x 884, 886 (3d Cir. 2005) (citing Lego v. Twomey, 404 U.S. 477 (1972)).

5

**IV. CONCLUSIONS OF LAW**

Upshur moves to suppress the following: (1) all evidence recovered during his arrest and (2) alleged statements he made during and after his arrest.

**A.  Motion to Suppress Evidence**

In his Motion to Suppress Evidence, Upshur seeks suppression of "all evidence recovered during his arrest due to an unreasonable investigation stop." Def.'s Mot. Suppress Evidence 1, ECF No. 24. He avers the arresting officers did not have an articulable reasonable suspicion to stop him and that all evidence obtained during his arrest, including the handgun and vials of crack cocaine, is therefore inadmissible as "fruit" of the unlawful action.

The Government disagrees, arguing none of the physical evidence in question was seized from Upshur, but instead was discarded by him during flight. Therefore, the Government avers, whether the officers had reasonable suspicion to conduct an investigative stop is irrelevant. In the alternative, the Government argues the officers had reasonable suspicion to conduct a stop and frisk, but that Upshur fled and discarded evidence before they could do so.

   1.  Whether Upshur Was Seized

"The Fourth Amendment prohibits unreasonable 'seizures' to safeguard '[t]he right of the people to be secure in their

6

persons.'" Torres v. Madrid, 141 S. Ct. 989, 993 (2021) (alteration in original). "The 'seizure' of a person . . . can take the form of 'physical force' or a 'show of authority' that 'in some way restrain[s] the liberty' of the person." Id. at 995 (alteration in original) (citing Terry v. Ohio, 392 U.S. 1, 19 n.16 (1968)).

In California v. Hodari D., 499 U.S. 621 (1991), a case with many parallels to the instant action, the U.S. Supreme Court considered whether the defendant had been "seized" within the meaning of the Fourth Amendment. In Hodari D., police officers patrolling a high-crime area of Oakland, California, saw a group of youths, including Hodari, huddled around a car. When the youths saw the officers' car approaching, they fled. Id. at 623. The officers gave chase. Hodari, looking behind as he ran, did not turn and see one of the officers until that officer was almost upon him, at which point Hodari tossed away what appeared to be a small rock and was later determined to be crack cocaine. Id. A moment later, the officer tackled Hodari.

Hodari moved to suppress evidence relating to the cocaine. The lower court agreed with Hodari, concluding he had been "seized" when he saw the officer running toward him. But the Supreme Court disagreed, explaining that an arrest, the "quintessential 'seizure of the person,'" requires "either

physical force . . . or, where that is absent, submission to the assertion of authority." Id. at 624, 626. The Court concluded that Hodari was not seized until he was tackled. Therefore, the cocaine he discarded while running was not the fruit of a seizure, and the evidence should have been admitted. Id. at 629.

The same is true here. The Court credits the Government's evidence that there had been no application of physical force by the police, and Upshur had not submitted to a show of authority, before Upshur discarded the evidence at issue. While Officer Rosinski got out of his vehicle and approached Upshur, this act does not, standing alone, constitute a seizure. See United States v. Smith, 575 F.3d 308, 312 (3d Cir. 2009) ("[L]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." (quoting United States v. Drayton, 536 U.S. 194, 200 (2002))).

Because Upshur had not been "seized" within the meaning of the Fourth Amendment at the time he discarded the evidence, the evidence was abandoned and therefore will not be suppressed.

    2.   Whether Officers Had Reasonable Suspicion

Even assuming, arguendo, that the officers needed reasonable suspicion of criminal activity to recover the

evidence Upshur discarded, the Court concludes that they had such reasonable suspicion.

"Generally, for a search or seizure to be reasonable under the Fourth Amendment, it must be effectuated with a warrant based upon probable cause." United States v. Bey, 911 F.3d 139, 144-45 (3d Cir. 2018) (citing United States v. Brown, 448 F.3d 239, 244 (3d Cir. 2006)). "Warrantless searches and seizures are presumptively unreasonable unless the Government satisfies its burden of establishing that one of the exceptions to the warrant requirement applies." Id. (citing California v. Acevedo, 500 U.S. 565, 580 (1991)).

One such exception permits police to "conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot," a so-called "Terry" stop. Illinois v. Wardlow, 528 U.S. 119, 123 (2000) (citing Terry v. Ohio, 392 U.S. 1, 30 (1968)). "[T]o lawfully detain someone under Terry—even briefly—the Government must establish by a preponderance of the evidence that 'each individual act constituting a search or seizure' was reasonable. More specifically, each aspect of the detention must be justified by a reasonable suspicion." Bey, 911 F.3d at 145 (quoting United States v. Ritter, 416 F.3d 256, 261 (3d Cir. 2005)). In evaluating reasonable suspicion, a court "must

consider 'the totality of the circumstances—the whole picture.'" United States v. Valentine, 232 F.3d 350, 353 (3d Cir. 2000) (quoting United States v. Sokolow, 490 U.S. 1, 7 (1989)).

Here, Upshur avers the officers did not have reasonable suspicion to conduct a Terry stop because they did not stop the person they saw with Upshur to confirm the presence of contraband. This argument is unpersuasive. The officers had reasonable suspicion of criminal activity as needed to conduct a Terry stop because, while patrolling a high-crime area known for drug trafficking, Stout saw Upshur attempt to hand another person a green vial Stout knew to be commonly used to hold crack cocaine.[4] Their reasonable suspicion grew when Upshur fled unprovoked upon noticing a uniformed police officer. See Illinois v. Wardlow, 528 U.S. 119, 125 (2000) (holding officers had reasonable suspicion to conduct a Terry stop where they "were among eight officers in a four-car caravan that was converging on an area known for heavy narcotics trafficking," "anticipated encountering a large number of people in the area, including drug customers and individuals serving as lookouts,"

---

[4] Although Upshur's Motion to Suppress Evidence also argues the officers lacked "probable cause," the motion challenges the alleged Terry stop which, as set forth above, must be supported not by probable cause, but by reasonable suspicion of criminal activity. See Def.'s Mot. Suppress Evidence 1.

10

and observed the defendant flee unprovoked upon noticing the police).

For the foregoing reasons, the Motion to Suppress Evidence will be denied.

**B.  Motion to Suppress Statements**

Next, Upshur moves to suppress statements made after his arrest. While his motion does not identify any specific statements, the Government points to two such sets of statements: (1) the spontaneous statement Upshur made about the gun being a .380 caliber and (2) the statements Upshur made in response to direct police questioning while he was being booked.

1.  Spontaneous Statement

The Fifth Amendment to the U.S. Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." The Supreme Court has interpreted this provision as prohibiting the prosecution from using statements "stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." Miranda v. Arizona, 384 U.S. 436, 444 (1966). Custodial interrogation involves "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id.

"[T]he term 'interrogation' under Miranda refers . . . to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." United States v. Brownlee, 454 F.3d 131, 146 (3d Cir. 2006) (alteration in original) (quoting Rhode Island v. Innis, 446 U.S. 291, 301 (1980)). "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected" by the Supreme Court's opinion in Miranda. Miranda, 384 U.S. at 444.

Here, the Court concludes that Upshur's statement that the gun police recovered "is a .380" did not stem from custodial interrogation. The Court credits the officers' suppression hearing testimony that they did not question Upshur about the gun during this conversation or direct their comments at him, and there is no indication that the officers should have been aware that their comments would elicit an incriminating response from Upshur. Upshur seems to concede that this is the case. See Def.'s Reply Supp. Mots. Suppress 3, ECF No. 42 ("Upshur does however agree with the Government that spontaneous statements made by a suspect are . . . admissible.").

Because Upshur's comment was voluntary, there was no violation of his Miranda rights. See Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980) (holding that the defendant was not

12

"interrogated" within the meaning of Miranda where officers had a brief conversation in his presence to which no response was invited); United States v. Calisto, 838 F.2d 711, 718 (3d Cir. 1988) (same, where the officer's "single, isolated remark" was not directed to the defendant, was "the kind of remark that an officer would normally make in carrying out his duties under the circumstances that confronted him," was "not made in a provocative manner," the defendant "showed no signs of being emotionally upset or overwrought," and it was not "reasonable to expect an inculpatory response" from the defendant).

For these reasons, the motion to suppress Upshur's statement about the gun will be denied.

### 2. Statements in Response to Questioning

The second set of statements involves Upshur's responses to Stout's asking him why he had a gun. It is undisputed that Upshur made these comments without being advised of his Miranda rights.

Upshur avers these statements "are the product of a custodial interrogation" and that he was questioned "without being informed of his right to remain silent or his right to an attorney," in "clear violation" of Miranda. Def.'s Mot. Suppress Statements 1, ECF No. 37. Upshur is correct. He was in police custody when he made these statements, the officer should have known the question was reasonably likely to elicit an

13

incriminating response from Upshur, and Upshur was not advised of his Miranda rights. Therefore, his Miranda rights were violated. The Government concedes that this is the case.

For these reasons, the motion to suppress will be granted with respect to the statements made in response to the booking officer's inquiries. Accordingly, the statements will be inadmissible in the Government's case in chief.[5]

## V. CONCLUSION

For the foregoing reasons, the Court will deny the Motion to Suppress Evidence and will grant in part and deny in part the Motion to Suppress Statements.

---

[5] However, these statements may be admissible for impeachment purposes if Upshur testifies in his own defense. See Harris v. New York, 401 U.S. 222, 226 (1971) ("The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances.").